This is the second time this case has been before this Court. In Shaffer v. Reed, 437 So.2d 98 (Ala. 1983), hereinafter referred to as Shaffer I, this Court held that options, given under a will, allowing specific legatees to purchase bank stock violated the rule against perpetuities. The legal effect ofShaffer I was that the bank stock became a part of the residuary estate.
The issue on this second appeal, hereinafter designated asShaffer II, is whether the trial court erred in allowing restitution in favor of Hugh Reed, Jr., as a specific legatee, without first reviewing allegations of mismanagement, maladministration, and breach of fiduciary duties on the part of Hugh Reed, Jr., in his capacity as co-executor of the estate, when these allegations were pending in a separate proceeding before the same trial judge.
The facts necessary to resolve this issue are as follows:
On August 10, 1982, appellants, as residuary legatees, filed a complaint for declaratory judgment (Shaffer I), seeking construction of certain portions of the Tevis Smith Burke will. The complaint was filed against Thomas Money and Hugh Reed, Jr., as specific legatees. Thomas Money and Hugh Reed, Jr., are also the co-executors of the Burke estate. They were not named as defendants in their capacity as co-executors of the Burke will in Shaffer I.
Pursuant to paragraph 6 of the will, Hugh Reed, Jr. exercised his option to purchase 1,119 shares of Cherokee County Bank stock from the Burke estate for the sum of $279,750. The executors used these funds to pay state and federal taxes. InShaffer I this Court determined that paragraph 6 of the will violated the rule against *Page 1084 
perpetuities. Shaffer v. Reed, 437 So.2d 98 (Ala. 1983).[1]
On remand, the trial court entered a final judgment on September 26, 1983, in which the court directed Reed to retransfer and reassign the bank stock to the estate. The trial court allowed Reed to treat the $279,750 he had paid for the stock as a loan to the estate, and required the estate to reimburse Reed for the money he paid to the estate, plus interest. On October 6, 1983, appellants timely filed a motion to vacate this judgment and also prayed for relief against Hugh Reed, Jr., and Thomas Money in their respective capacities as co-executors of the Burke estate, alleging misconduct, maladministration, and breach of fiduciary duties. Because these claims against the co-executors were pending in a separate proceeding filed by the appellants against them, the appellants further prayed that the two proceedings be consolidated.
On November 30, 1983, after hearing arguments from both sides, the trial court vacated the September 26, 1983, judgment on the ground that it "was issued without notice" to the appellants, but entered another judgment in which the court "require[d] the estate of Tevis Smith Burke to pay back to Hugh Reed, Jr., the sum of $279,750.00, with interest at the rate of six percent from October 1, 1982, which said payment to the estate is to be treated as a loan or advance to the estate and paid as any other claim against the estate."
The court, in the second judgment, considered the allegations of maladministration, mismanagement, and breach of fiduciary duties, and decreed:
 "[T]here are other pending matters in regard to the ultimate disposition of the estate of Tevis Smith Burke; however, they are not involved in this proceeding for declaratory judgment at this time. One such matter is the estate of Tevis Smith Burke that was removed from the Probate Court to the Circuit Court and which is now pending in said Circuit Court as Case No. CV 82-109. The other matter now pending and most recently filed is Case No. CV 83-90, wherein the Defendant Reed is charged with mismanagement of the estate of Tevis Smith Burke and Defendant Money is alleged to have improperly paid himself Executor fees from said estate. The issues in these matters are not now before the Court. Likewise, the Court notes that Hugh Reed, Jr. and Thomas Money are not parties to the instant proceeding in their capacity as executors."
This appeal is from the second judgment.
The appellants contend that the second judgment should be set aside because the executors did not rebut allegations of misconduct and wrongdoing which resulted in financial damage to them as residuary legatees. Because the trial court acknowledged these accusations, but refused to deal with them in the second judgment, appellants argue that, in effect, the court simply vacated the first judgment and then reinstated it in the second judgment. Thus, appellants claim that because the first judgment was set aside for violating the residuary legatees' rights to due process, the second judgment should be set aside for the same reason. We find no merit in this argument.
The trial court's judgment of November 30, 1983, was rendered after notice was given and following a hearing in which all parties were represented by counsel. The fact that the trial court refused to adjudicate the allegations of mismanagement, maladministration, and breach of fiduciary duties does not affect the due process rights of the residuary legatees, because these matters are still pending in an entirely separate proceeding. *Page 1085 
In addition to their due process claim, the appellants also contend that the trial court erred in ordering restitution, with interest, to Hugh Reed, Jr., without considering his wrongdoing as co-executor. They contend that restitution is not a right and should be determined by weighing the equities which arise out of the relationships of the parties.
In Maslankowski v. Carter, 291 Ala. 8, 277 So.2d 91 (1973), this Court stated the rule with regard to restitution after reversal as follows:
 "We believe that the case of McCall v. McCurdy, 69 Ala. 65 (1881), best states the rule with regard to restitution after reversal, as follows:
 "`* * * The restoration of parties to the plight and condition in which they were, at and prior to the rendition of an erroneous judgment or decree, and the restitution of all advantages the party obtaining it may have acquired by its enforcement, upon reversal, it is the spirit and policy of the law to promote and compel, when there are not facts and circumstances which may render restitution inequitable.' * * *"(Emphasis supplied)
 "Respondent, Judge Eugene Carter, in his answer to the rule nisi states that it would constitute a `grave injustice' and would be contrary to equitable principles' to require the minor to make restitution as a condition precedent to the further prosecution of this case. The answer states the minor has no funds with which to support herself and no assets except this chose in action against petitioner.
 "In Atlantic Coast Line R.R. v. Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451 (1935), the Supreme Court of the United States, speaking through Mr. Justice Cardozo, stated the rule to be as follows:
 "`* * * A cause of action for restitution is a type of the broader cause of action for money had and received, a remedy which is equitable in origin and function. Moses v. Macferlan, 2 Burr. 1005; Bize v. Dickason, 1 Term Rep. 285; Farmer v. Arundel, 2 Wm.Bl. 824; Kingston Bank v. Eltinge, 66 N.Y. 625. The claimant, to prevail, must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it. Schank v. Schuchman, 212 N.Y. 352, 358, 359, 106 N.E. 127; Western Assurance Co. v. Towle, 65 Wis. 247, 26 N.W. 104, 108. The question no longer is whether the law would put him in possession of the money if the transaction were a new one. The question is whether the law will take it out of his possession after he has been able to collect it. Cf. Tiffany v. Boatman's Institution, 18 Wall. [85 U.S.] 375, 385, 390, 21 L.Ed. 868. * * *
 "`Suits for restitution upon the reversal of a judgment have been subjected to the empire of that principle like suits for restitution generally. "Restitution is not of mere right. It is ex gratia, resting in the exercise of a sound discretion, and the court will not order it where the justice of the case does not call for it, nor where the process is set aside for a mere slip." Gould v. McFall, 118 Pa. 455, 456, 12 A. 336, citing Harger v. Washington County, 12 Pa. 251. There are other decisions to the same effect. Alden v. Lee, 1 Yeates (Pa.) 207; Green v. Stone, 1 Har. J. (Md.) 405; State v. Horton, 70 Neb. 334, 97 N.W. 434; Teasdale v. Stoller, 133 Mo. 645, 652, 34 S.W. 873. "In such cases the simple but comprehensive question is whether the circumstances are such that equitably the defendant should restore to the plaintiff what he has received," Johnston v. Miller, 31 Gel. Russ. 83, 87.'"
291 Ala. at 11, 277 So.2d at 94.
We do not find that the trial court abused its discretion in granting restitution to Reed against the Burke estate. This discretion was based upon the fact that the allegations of wrongdoing on Reed's part, *Page 1086 
in his capacity as co-executor, had not yet been resolved in an adversary proceeding.
The same trial judge in this proceeding has been specially assigned to hear the separate estate proceeding; therefore, those matters which appellants complain were not addressed by the trial judge in this proceeding may be addressed in future proceedings, and thus appellants' rights are not being abridged, nor are appellants denied an adequate remedy.
The sole issue before the trial court was whether restitution should be allowed in favor of Reed as specific legatee. A remedy of restitution is founded upon the principle of avoiding unjust enrichment of one at the expense of another. Foshee v.General Telephone Co., 295 Ala. 70, 322 So.2d 715 (1975);Opelika Production Credit Ass'n v. Lamb, 361 So.2d 95 (Ala. 1978); Sherrill v. Frank Morris Pontiac-Buick-GMC, Inc.,366 So.2d 251 (Ala. 1979). Here, Reed was granted restitution for money he paid for stock which he was later directed to convey back to the estate. We cannot hold, based upon the facts before the trial court in this proceeding, that the order of restitution was inequitable. Maslankowski v. Carter, supra.
The judgment of the trial court is due to be affirmed, but by affirming the judgment, we should not be understood as addressing the issues raised by the appellants in the proceeding which is still pending in the trial court.
AFFIRMED.
JONES, ALMON, EMBRY and ADAMS, JJ., concur.
[1] In Shaffer I, it is apparent from the language used in the opinion that the options bequeathed to Reed and Money were characterized solely within the property context as future interests. Because the Court, in Shaffer I, characterized the options as future interests, the Court correctly concluded that the options were capable of exercise beyond the measuring period allowed by the rule. See 61 Am.Jur.2d Perpetuities andRestraints on Alienation, §§ 59-66 (1981).